# IN RE: A SPECIAL INVESTIGATION NO. 258

[No. 1408, September Term, 1982.]

*Decided June 10, 1983.*

The cause was argued before Lowe and Alpert, JJ., and Frederick A. Thayer III, Associate Judge of the Fourth Judicial Circuit, specially assigned.

*M. Albert Figinski,* with whom were *Arnold M. Weiner* and *Gregg L. Bernstein* on the brief, for appellants.

*Dale P. Kelberman, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

Lowe, J., delivered the opinion of the Court.

When the Attorney General of Maryland is authorized by the Governor or the Legislature to investigate criminal conduct and prosecute, pursuant to his restricted constitutional authority to do so (Md. Const. Art. V, § 3) it follows that he may attend, assist and participate with a grand jury conducting a correlative investigation. *Maloney v. State,* 17 Md. App. 609 (1973). Because of his expertise, the Attorney General's advice undoubtedly causes his influence to be preemptive of the direction an investigation may take by such a grand jury. The plenary authority of the grand jury is customarily utilized in such cases, just as it is equally influenced by a State's attorney in more mundane criminal investigations and prosecutions.

Prosecutors have in Maryland traditionally relied upon the grand jury's right to issue subpoenas as an auxiliary to expedite their investigations, and the relationship of grand jury and prosecutor has become investigatively intertwined. See, *e.g., In Re: Special Investigation No. 244,* 296 Md. 80 (1983); *In Re: A Special Investigation No. 224,* 54 Md. App. 137 (1983). This cooperative effort of exchanging investigative expertise for subpoena power, etc., is obliged by the Legislature's having declined to provide the Attorney General with any comparable criminal subpoena power. We pointed out in *St. Comm'n on Human Rel. v. Balto. Co.,* 46 Md. App. 45, 46-48 (1980), the irony of the Legislature's continual denial of that "awesome" intrusive right to the Attorney General for criminal investigations, while granting it helter-skelter to administrative agencies and governmental adjuncts for every conceivable purpose, including for civil purpose, the Division of Consumer Protection of the Office of the Attorney General. Md. Com. Law Code Ann. § 13-405.

But that, nonetheless is, and was, the status of the subpoena right for criminal investigations when the Grand Jury of Baltimore City issued a subpoena duces tecum to the Sequoia Savings & Loan Assoc., Inc., on September 20, 1982,

for the production of the records of the accounts of individuals who, and companies which, are the appellants in this appeal. The subpoena was signed by the foreman of the Grand Jury issuing it, and an addendum suggested that any questions relating to it might be directed to a designated assistant attorney general, who we assume was the assigned advisor to that Grand Jury.

Financial institutions such as Sequoia are generally prohibited from disclosing their customers' records, Md. Fin. Inst. Code Ann., § 1-302, but the prohibition is subject to certain exceptions, one of which is upon issuance "on lawful authority" of a subpoena. § 1-304. The "lawfulness" of a subpoena (releasing the institution from disclosure prohibition) appears to include service upon the customer as well as the institution, however, customer service may be "waived by the court for good cause". Waiver was provided in this case upon such finding.

Appellants, however, appear to have had their own sources of information if not of "notice" since they moved propitiously to quash the subpoena. After a prolonged hearing which took diverse tangents, the Criminal Court of Baltimore granted the State's Motion Ne Recipiatur to the appellants' motion to quash on the ground that appellants had "no standing to so move."

Although we are unable to see how the court could act further upon a motion which it ruled it would not receive, it further ordered nonetheless, that the motion to quash — which it had refused to receive — was also to be denied

> "based on this Court's finding that the Attorney General is properly authorized to conduct the investigation and the matter was properly presented to the Grand Jury."

Having thus once beaten an already dead horse by denying what it had refused to receive, it again went on (unnecessarily) to limit by its order the disclosure of the subpoenaed documents to representatives of the Criminal Investigation Division of the Attorney General's office,

"and no other person, agency or division of the Attorney General's Office."

Apparently the court did not consider the two latter exercises as futile (despite the fact that those peripheral issues were obliterated when the motion upon which they were predicated in argument was declined) because they formed part of the basis for appellants' argument that they had standing to attack the subpoena.

Ironically, these peripheral issues are the primary point of focus in the arguments on appeal obfuscating the very clear answer to so much of appellants' question as they are entitled to ask. That question is:

"Did the lower court err when it denied standing to appellants to challenge the Attorney General's authorization to conduct an investigation into Appellants' activities; more particularly, was reversible error committed when the lower court denied standing to Appellants to challenge the Attorney General's authority to use the grand jury process to investigate Appellants?"

Even if the trial court had been wrong in holding that appellants had no standing to move to quash the subpoena of the grand jury, we fail to see how a motion to quash the grand jury's subpoena can give rise to a right to challenge the Attorney General's role as adviser to that Grand Jury. But we need not reach that question to decide this case because we hold that the court was correct in holding that the appellants, as the bank's customers, had no standing to attack the subpoena to the bank.

Absent an improper and unnecessary harassment, we know of no constitutional right of one under grand jury investigation to obstruct, or even to impede, that investigation by inquiring into its procedural propriety which traditionally is (as nearly as possible) a jealously guarded secret. *In Re: A Special Investigation No. 224, supra.* Few, if any, constitutional rights are available to an accused until it becomes apparent that he is the known focus of the inves-

tigation and "the suspect has been taken into police custody . . . ." *Escobedo v. Illinois,* 378 U.S. 478, 491 (1964). *Escobedo* extended the Fifth and Sixth Amendment rights to silence and counsel that far, but other rights, such as the right to a speedy trial do not commence even then. *Gee v. State,* 54 Md. App. 549 (1983).

A Fourth Amendment search and seizure right obviously can accrue to a suspect not in custody, prior to such "focus", but we pointed out in *In Re: A Special Investigation No. 242,* 53 Md. App. 360 (1982), that, based upon the holding in *United States v. Miller,* 425 U.S. 435 (1976), a suspect bank customer has no Fourth Amendment interest to protect when a subpoena is issued to the bank, even though the records sought are those of the customer.

Appellants reluctantly acknowledge that under *Miller* they possess no Fourth Amendment interest that could be vindicated by a challenge to the subpoena. So thwarted, they seek standing from Maryland's statute that restricts disclosure of such records by the financial institutions, presumably contending that even absent a constitutionally protected right of privacy, they are provided here a comparable statutory right or protectable interest under § 1-302, which they contend provides them with standing. Section 1-302 states that:

> "Except as otherwise expressly provided in this subtitle, a fiduciary institution, its officers, employees, agents, and directors may not disclose to any person any financial record relating to a customer of the institution unless the customer has authorized the disclosure to that person."

If that statute appears to appellants to give them sufficient interest to provide standing, it is by its language a very limited interest. Assuming (but certainly not deciding) that § 1-302 was intended as a statutory reinstatement of an interest comparable to the Fourth Amendment one denied by *Miller* that could be vindicated by a challenge to the

subpoena, the Act itself gives back to the bank immunity to disclose in compliance with a subpoena. Thus, to that extent, appellants are deprived by the exception in the statute of the privacy interest they claim accrued to them under that statute. Section 1-304 (b) explains that:

> "A fiduciary institution may disclose financial records in compliance with a subpoena, if the subpoena is served on the fiduciary institution and, unless waived by the court for good cause, on the customer."

Subsection (a) of that section provides a definition of a subpoena,

> "In this section, 'subpoena' means a subpoena, summons, warrant, or court order that appears *on its face* to have been issued on lawful authority," (emphasis added),

and we hasten to point out that appellants make no claim that the subpoena does not appear on its face to have been issued on lawful authority. To the contrary, the record reveals that clearly it *was* issued on proper authority, that is, upon the authority of

> "The Grand Jury for Baltimore City",

and it is signed on its behalf by its foreperson. Absent any facial impropriety then, even according to the statute upon which appellants must rely, any further right to attack such a subpoena is wanting.

Nonetheless, appellants pressed on below as they do here, arguing that they have a due process right to "determine" what, if any, good cause existed for the "waiver of notice" to them of the subpoena as suggested by § 1-304 (b). If that is the process appellants find due them, the absurdity of their contention is apparent in the very right thus given the court to waive the service they claim is due them. A right to challenge the court's waiver of notice presupposes the notice the waiver provision was intended to obviate. To hold that they

have a pre-waiver right to challenge it would defeat the very purpose of the provision, and we have often pointed out not only that we may not interject into a statute that which the Legislature chose to omit, *GEICO v. Ins. Comm.,* 273 Md. 467, 482 (1975), but even in interpreting what is written, we will not construe it to provide an obvious absurdity. *State v. Fabritz,* 276 Md. 416, 422 (1975).

Appellants next sought below and again seek here, to challenge the Attorney General's authorization (by the Governor under Md. Const. Art. V, § 3) to conduct the pending investigation into appellants' activities. But in light of the repeated denial of the subpoena right by the Legislature to the Attorney General, we fail to see the relevance of that issue to appellants' motion to quash the Grand Jury subpoena. Appellants again grasp at the due process clause to argue that:

> "Due process mandates that Appellants are entitled to examine this authorization and challenge its validity before irreparable harm is caused by release of the subpoenaed records."

Overlooking the fact that the only "harm" pointed out by appellants, or even foreseeable by us, is appellants' possible subsequent indictment,[1] we note that the Grand Jury's right to issue the subpoena is not legally affected in the least by the Attorney General's authority to investigate appellants. As pointed out the two investigations may coincide and may be reciprocally beneficial, but the Attorney General's authority has no legal bearing on the Grand Jury's subpoena.

It was, perhaps, when the trial judge provided appellants more than that to which they were entitled that this sense

---

1. Appellants argued that they were entitled to investigate that authorization to determine whether the Attorney General was abusing his Consumer Protection Civil Procedure subpoena authority granted in Md. Com. Law Code Ann. § 13-405 which is proscribed for use in criminal proceedings. Obviously that issue would only be arguable if the subpoena had been a civil one from the Attorney General rather than a grand jury subpoena correct on its face.

of justice was magnified by appellants into an enlarged matter of right of even greater relief. Appellants point to no authority suggesting their right to review this authorization (even in a proper proceeding) prior to the initiation of a prosecution, and clearly the Maryland Public Information Act does not provide such right. See Md. Ann. Code, Art. 76A, § 3 (a) (iv) and § 3 (b) (i). See also *Faulk v. State's Atty. for Harford Co.*, 52 Md. App. 616 (1982). Yet the judge did require the Attorney General to produce his authorization for an *in camera* inspection. The dead horse the judge beat by giving appellants more than their due, however, is not a gift-horse whose mouth may be examined by a donee.

The gratuitous examination and subsequent restrictive use holding was undoubtedly added because appellants argued that even if the Attorney General had authority, his authority may have been to investigate either criminal or civil infractions or both. If both, appellants contend that the grand jury process was not available to procure material for use in a civil or administrative matter, citing numerous federal cases including *In Re: Grand Jury Subpoenas April 1978, etc.,* 581 F.2d 1103 (4th Cir. 1978). It was that concern which the judge settled by his abundance of caution in prophylactically proscribing by order that which appears clearly to be as limited by the law in any case.

In summary we can see at this stage of the proceeding absolutely no right or relevance, upon motion to quash a grand jury's subpoena, of appellants to review or "determine" the Attorney General's authority to investigate them. The appearance of conflict (that the Attorney General's civil hand will not know what his criminal hand is doing) arises from the legislative decision to append an administrative agency as a writ of the Attorney General's Office. In the absence of evidence to the contrary, we must follow the General Assembly and apply our faith in government as assurance that the Attorney General will keep the Consumer Protection Division in ignorance of his knowledge acquired through the grand jury process and vice versa. In any event, the time to complain is not in anticipation of such disclosure but if and

"[w]hen the violation takes place appropriate action can then be taken." *In Re: Special Investigation No. 244, supra,* 296 Md. at 96.

More importantly, we can find no authority to suggest that appellants may challenge a subpoena to a financial institution calling for their records, *Miller, supra,* or to challenge at this juncture the propriety of a finding of good cause by a court for a waiver of service of a copy of such subpoena. We even question their right to raise that issue, absent a facial lack of authority on the subpoena, since the waiver itself presupposes ignorance of the subpoena which ignorance is intended to be perpetrated by the waiver. The Legislature clearly did not express, or implicitly contemplate the right to challenge the waiver.

We hold, therefore, that the trial court properly granted the State's Motion Ne Recipiatur on the ground that the appellants lacked standing. Beyond that, all else was surplusage improvidently decided by that court and unnecessarily addressed by this one.

Finally, while the actors and their counsel differ, the smoke screen is similar and we are inclined to agree with Judge Moylan in *In Re: A Special Investigation No. 224, supra,* 54 Md. App. at 139, that the purpose of these subpoena attacks is "ingenious obstructionism" which is accomplished by impeding investigations from one Grand Jury to another. *See, e.g., In Re: Special Investigation No. 236,* 295 Md. 573 (1983); but see *In Re: Special Investigation No. 244, supra,* written after the demise of a grand jury to enlighten its successor. Indeed, we denied for that very reason a motion filed on the day of argument to dismiss this appeal.

*Judgment affirmed.*
*Costs to be paid by appellants.*
*Mandate to issue forthwith.*