542 A.2d 413

**In re CRIMINAL INVESTIGATION NO. 1.**

**No. 1618, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

June 14, 1988.

Andrew Radding (David L. Jacobson and Blades & Rosenfeld, P.A., on the brief), Baltimore, for appellant.

Peter E. Keith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MOYLAN, WILNER and BLOOM, JJ.

BLOOM, Judge.

The shock waves from the collapse of Old Court Savings & Loan Association weakened (or at least revealed the weakness of) the foundations of several other savings and loan institutions, precipitating a crisis that appears destined to keep the courts of this state and a good many of its lawyers supplied with litigation for quite some time. This appeal is part of that litigation; it arises from the financial difficulties of one of those troubled savings and loan institutions (hereinafter referred to as The Institution).[1]

A Special Grand Jury investigating The Institution caused to be issued several subpoenas duces tecum, two of which

---

1. In accordance with Md.Rule 1098(b), we shall refrain from identifying the savings and loan institution and the other parties.

are relevant here. One was issued directly to appellant, a former director and officer of The Institution, ordering him to appear before the Grand Jury with certain records relating to The Institution and its operations. The other subpoena was issued to appellant's accountant, directing the accountant to appear before the Grand Jury with records pertaining to appellant's income taxes for the years 1980–1987.

Upon receipt of the subpoena served upon him, appellant filed a motion to quash it, contending that the subpoena infringed upon the privilege against self-incrimination afforded him by both the Fifth Amendment to the federal constitution and Article 22 of the Maryland Declaration of Rights. Concomitantly, appellant notified his accountant that he intended to assert his privilege against self-incrimination relative to the income tax records held by the accountant.[2] The accountant was commanded to release the income tax records to appellant and, therefore, not to produce the files or copies to the Grand Jury. In response to his client's demands, the accountant filed a motion, in the Circuit Court for Baltimore County, for a protective order and requested the court to instruct him whether he must comply with the Grand Jury's subpoena or whether his client's assertion of a Fifth Amendment privilege would override the subpoena.

A hearing on appellant's motion to quash and his accountant's motion for protective order was held on December 2, 1987. At the conclusion of the hearing, the court entered two orders. The first order denied appellant's motion to quash and commanded him to comply with the subpoena served on him (with one restriction not relevant here); the second denied the accountant's motion for protective order and directed the accountant to comply with the subpoena

---

**2.** Appellant could not, of course, assert the statutorily recognized accountant-client privilege, since that privilege does not apply generally to criminal actions, Md.Cts. & Jud.Proc.Code Ann. § 9–110(b), and specifically to subpoenas issued by a Grand Jury. *In Re: Special Investigation No. 236,* 295 Md. 573, 458 A.2d 75 (1983).

served on him.  This appeal, allegedly taken pursuant to the holding of the Court of Appeals in *In re: Special Investigation No. 244*, 296 Md. 80, 83–86, 459 A.2d 1111 (1983), is from the order denying the accountant's motion.  In accordance with an agreement made at the December 2, 1987, hearing, the circuit court stayed its order pending this appeal.  Since no appeal was taken from the denial of appellant's motion to quash, that order was not stayed.

Appellant makes three contentions that he asserts warrant a reversal of the order to enforce the subpoena issued to the accountant.  Specifically, he contends:

1. The subpoena exceeds the gubernatorial authorization and is thus invalid.

2. The subpoena exceeds the reasonableness and relevancy limitations of the Fourth Amendment.

3. The subpoena, if enforced, violates appellant's privilege against self-incrimination.[3]

I

The United States Supreme Court consistently has stated that a grand jury's function should not, except in the most extreme situations, be interrupted, interfered with, or monitored too closely.  *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *Blair v. United States*, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919); *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906).[4]  Maryland has likewise extended the

---

3.  In the pleadings filed below, appellant asserted both his federal and state privilege against self-incrimination.  Although we shall consider and decide the issue in the context of both privileges, we shall limit our discussion to the Fifth Amendment privilege, because the Maryland constitutional privilege is to be construed *in pari materia* with the federal Fifth Amendment privilege.  *State v. Panagoulis*, 253 Md. 699, 253 A.2d 877 (1969); *Brown v. State*, 233 Md. 288, 196 A.2d 614 (1964).

4.  *See also, United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), at 17, 93 S.Ct. at 773 where the Supreme Court

same deference to the unfettered functioning of the grand jury. *Bartram v. State*, 280 Md. 616, 374 A.2d 1144 (1977); *Bernard v. Warden*, 187 Md. 273, 49 A.2d 737 (1946); *In Re: Report of Grand Jury*, 152 Md. 616, 137 A. 370 (1927); *Pick v. State*, 143 Md. 192, 121 A. 918 (1923); *Owens v. Owens*, 81 Md. 518, 32 A. 247 (1895); *Blaney v. State*, 74 Md. 153, 21 A. 547 (1891); *In Re: A Special Investigation No. 224*, 54 Md.App. 137, 458 A.2d 454, *cert. denied*, 296 Md. 414 (1983).

Notwithstanding these authorities, appellant has attempted to thwart the present grand jury investigation by asserting that the subpoena exceeds the authority granted to the Attorney General's investigation. Specifically, appellant argues that the authorization by the Governor [5] is only for an investigation of The Institution and not for a tax investigation of himself. He concludes that if the Attorney General wants to investigate his personal income taxes then the Attorney General will need another gubernatorial authorization to do so as the present authorization does not permit a tax investigation of appellant.

██ Based on our decision in *In Re: A Special Investigation No. 258*, 55 Md.App. 119, 461 A.2d 34 (1983), we believe appellant's argument is premature. In that case, the late Judge Lowe stated that "[a]bsent an improper and unneces-

---

stated: "Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws."

5. Md. Const. art. V, § 3(a)(2) provides:
The Attorney General shall:

.   .   .   .   .

Investigate, commence, and prosecute or defend any civil or criminal suit or action or category of such suits or actions in any of the Federal Courts or in any Court of this State, or before administrative agencies and quasi legislative bodies, on the part of the State or in which the State may be interested, which the General Assembly by law or joint resolution, or the Governor, shall have directed or shall direct to be investigated, commenced and prosecuted or defended.

sary harassment, we know of no constitutional right of one under grand jury investigation to obstruct, or even to impede, that investigation by inquiring into its procedural propriety which traditionally is (as nearly as possible) a jealously guarded secret." 55 Md.App. at 123, 461 A.2d 34. Judge Lowe further noted that "we fail to see how a motion to quash the grand jury's subpoena can give rise to a right to challenge the Attorney General's role as adviser to that Grand Jury." *Id.* In summation, Judge Lowe concluded that "we can see at this stage of the proceeding [the pre-indictment stage] absolutely no right or relevance, upon a motion to quash a grand jury's subpoena, of appellants to review or 'determine' the Attorney General's authority to investigate them." 55 Md.App. at 127, 461 A.2d 34. In light of these foregoing statements and because of the importance of allowing a grand jury to work without any interference, it would be incongruous for us to permit a challenge to the gubernatorial authorization of the Attorney General at this pre-indictment stage. Furthermore, such a challenge ordinarily could not be made because the subject of a grand jury investigation has no right to inspect the gubernatorial authorization prior to an indictment. *In Re: A Special Investigation No. 258,* 55 Md.App. at 127, 461 A.2d 34. Consequently, a subject under investigation by a grand jury should be unable to challenge, in good faith, the gubernatorial authorization because the investigatee ordinarily would not know the contents of the authorization until, and if, an indictment is handed down. In short, the subject of a grand jury investigation has no right to attack the Attorney General's authorization prior to the issuance of an indictment. If and when the subject is indicted he may move to quash the indictment, or if he is convicted upon that indictment, he can then launch an attack on the conviction, based upon the fact that the Attorney General lacked the authority to prosecute in the first instance. *See, e.g., Bomhardt v. State,* 71 Md.App. 609, 526 A.2d 983, *cert. denied,* 311 Md. 144, 532 A.2d 1371 (1987). To permit appellant to challenge the Attorney General's authorization

prior to a conviction or even prior to an indictment would send a message to other subjects of grand jury investigations to engage in, as Judge Moylan put it, "ingenious obstructionism." *See, In Re: A Special Investigation No. 224*, 54 Md.App. at 139, 458 A.2d 454. This we will not permit. We hold, therefore, that appellant's assault upon the Attorney General's authorization is, at this stage, premature.

■ We have no hesitancy in stating, nevertheless, that were this matter before us we would unquestionably reject appellant's contention that the Governor's authorization was not broad enough to support an investigation into appellant's tax records. At the December 2, 1987, hearing the Attorney General consented to make the gubernatorial authorization part of the record as an aid to the trial judge. (The mere fact that the authorization has been made part of the record does not thereby create a right to challenge that authorization in the pre-indictment stage. *See In Re: A Special Investigation No. 258*, 55 Md.App. at 127, 461 A.2d 34.) That authorization, issued pursuant to Md. Const. art. V, § 3(a)(2) and signed by Governor Schaefer, granted the Attorney General power to investigate "the possibility of criminal conduct with respect to the financial affairs of [The Institution], its affiliated companies and *associated individuals*." (Emphasis added.) The authorization permitted the investigation of various possible crimes, including "violations of the State tax laws." Since appellant was an "associated individual" of The Institution and since the authorization permitted an investigation of tax law violations, it is so clear that the Attorney General's investigation of appellant's tax records by way of the subpoena was entirely authorized and thus appropriate that appellant's contention to the contrary borders on the frivolous.

## II

The Fourth Amendment prohibition against unreasonable searches and seizures restricts the investigatory power of a grand jury. *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50

L.Ed. 652 (1906); *In Re: Special Investigation No. 281,* 299 Md. 181, 473 A.2d 1 (1984); *In Re: Special Investigation No. 249,* 296 Md. 201, 461 A.2d 1082 (1983). A subpoena duces tecum issued by a grand jury must be reasonable and relevant to the investigation. *Okla.Press Pub.Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *United States v. Mackey,* 647 F.2d 898 (9th Cir.1981); *In Re: Special Investigation No. 281, supra.* In determining whether a particular subpoena is reasonable, the court needs to consider three requirements.

1. That the subpoena command only the production of materials relevant to the investigation;
2. That the subpoena specify the materials to be produced with reasonable particularity; and
3. That the subpoena command production of materials covering only a reasonable period of time.

*In Re: Special Investigation No. 281,* 299 Md. at 192–93, 473 A.2d 1 (citing *United States v. Reno,* 522 F.2d 572 (10th Cir.1975)).

Appellant asserts that the subpoena fails to meet the first and third requirements. The Attorney General argues that we should not reach this issue because appellant never raised the argument below.

■ In order for an issue to be preserved for appeal, that issue must be raised and decided by the trial court. Md. Rule 1085. This Court ordinarily will not entertain an issue that was not raised below but is raised for the first time on appeal. *Kanaras v. State,* 54 Md.App. 568, 460 A.2d 61, *cert. denied,* 297 Md. 109 (1983); *White v. State,* 7 Md.App. 416, 256 A.2d 174 (1969); *Gaylord v. State,* 2 Md.App. 571, 235 A.2d 783 (1967). Throughout the pleadings and the hearing, appellant steadfastly asserted his privileges against self-incrimination, both state and federal, but not once did he assert any Fourth Amendment rights.[6] The

---

6. At oral argument, appellant's attorney stated that although the Fourth Amendment was never expressly invoked, pages 22–24 of the

Fourth Amendment argument having been neither raised nor decided by the trial court, that issue is not preserved for this appeal.[7]

## III

Appellant asserts that the subpoena issued to his accountant violates his Fifth Amendment privilege against self-incrimination. In support of this position, he cites three cases.

The first is *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), which involved a federal grand jury investigation of corruption in the awarding of county and municipal contracts. As part of that investigation,

---

hearing transcript invoked the spirit of that amendment. Our review of those pages does not comport with the attorney's argument.

7. It is, of course, highly questionable whether appellant has a viable Fourth Amendment argument. By turning his papers over to his accountant, appellant may well have relinquished any reasonable expectation of privacy in those papers, since the information in those papers was intended to be disclosed to the state and federal tax authorities. Furthermore, assuming that appellant could have asserted a reasonable expectation of privacy in those documents and thus had a cognizable Fourth Amendment claim, it is apparent that the subpoena issued to the accountant did conform to the three-prong Fourth Amendment test for reasonableness as enunciated in *In Re: Special Investigation No. 281.* That is, the items requested from the accountant were tax records within the contemplation of the authorized investigation as the authorization permitted an investigation into possible "violations of State tax laws." Hence, the subpoena commands the production of materials relevant to the investigation. The subpoena to the accountant specified the materials for production with reasonable particularity. Indeed, it was the particularity of the subpoena of which appellant complains. Therefore, prong two of the reasonableness test was satisfied. The subpoena commanded the production of tax records for the period of 1980–1987. We see nothing unreasonable about an investigation covering this eight year period. The problems with Maryland's savings & loan institutions began in 1979 with the rise of interest rates. *See, Cardin v. State,* 73 Md.App. 200, 533 A.2d 928 (1987), *cert. denied,* 312 Md. 126, 538 A.2d 777 (1988). Since the present investigation is related to the finances of The Institution and to appellant, who is related to The Institution, the period beginning in 1980 is appropriate for a determination of whether criminal acts were committed at a time when a number of savings and loan institutions began to struggle for survival.

subpoenas were issued to Doe, the owner of a sole proprietorship, commanding the production of certain business records of several of his companies. Doe filed a motion to quash the subpoenas which the Federal District Court granted except as to records required by law to be kept or disclosed to a public agency. The District Court held that Doe's act of producing the records would involve a compelled testimonial self-incrimination. The United States Court of Appeals for the Third Circuit affirmed, holding that the records were privileged by the Fifth Amendment and that Doe's act of producing them would have a "communicative aspect of its own" in that the turning over of the records to the grand jury would admit their existence, possession, and authenticity.

The Supreme Court affirmed in part, reversed in part, and remanded. In so doing, it held that the contents of the subpoenaed documents (which are equal in many respects to the ones subpoenaed in the case *sub judice*) were not privileged by the Fifth Amendment. The Court noted that the Fifth Amendment protects the person asserting the privilege only from compelled self-incrimination. Where one prepared the records voluntarily, no compulsion would be present. In *Doe,* the Supreme Court noted that Doe did not claim that he prepared the documents involuntarily or that the subpoenas would force him to restate, repeat, or affirm the truth of the records. Hence, the Court held that the documents themselves were not privileged.

The Court went on to hold, however, that although the documents were not subject to Fifth Amendment protection, the act of producing them might be. That is, a subpoena that compels the *holder* of a document to perform an act could have a testimonial aspect with an incriminating effect. As the District Court made a finding of fact that the documents would incriminate Doe, the Supreme Court upheld the District Court's order, affirmed by the Circuit Court, that Doe's production of the documents would violate

his Fifth Amendment privilege. Accordingly, the Court concluded that the documents could not be compelled without a grant of use immunity. Consequently, the Court reversed the holding that the documents themselves were privileged by the Fifth Amendment, affirmed the holding that Doe's act of producing the documents would violate the Fifth Amendment, and remanded the case because it could not grant the use immunity that was implicitly promised by the government to Doe.

*Doe* is illustrative for our purposes for two reasons. First, the documents subpoenaed in *Doe*, although more diverse and numerous, were essentially similar in nature to the ones subpoenaed here. As in *Doe*, appellant does not contend that he prepared the documents involuntarily or that the subpoena would force him to restate, repeat, or affirm the truth of their contents. To the extent that the subpoenaed documents include work papers that were not prepared by appellant, they contain no testimonial declarations by appellant; as to any subpoenaed papers that were prepared by appellant, they were prepared voluntarily and thus cannot be said to contain compelled testimonial evidence. Consequently, appellant cannot avoid subpoena compliance on the grounds that the documents which the accountant is required to produce contain incriminating writing. *See, Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Based upon *Doe*, therefore, the subpoenaed documents themselves are not protected by the Fifth Amendment. In that respect, *Doe* supports the Attorney General's argument, not appellant's.

Secondly, the Supreme Court's holding that compelling Doe to produce the documents would violate his Fifth Amendment privilege has no applicability to the case *sub judice*. The documents in this case are being held by the accountant; it is the accountant who is being compelled to produce them and not appellant. *Doe*, therefore, furnishes no support for appellant's argument.

The second case relied upon by appellant is *United States v. Darwin Construction Co., Inc.*, 632 F.Supp. 1426 (D.Md.1986). In *Darwin*, the Internal Revenue Service (IRS) sought judicial enforcement of a summons served on Darwin Construction Company, Inc. (Darwin). The summons sought "[a]ll records or documents pertaining to the above corporation" for the period of 1980–1983. The summons also demanded the production of 25 listed specific items. Darwin, by way of its representative, refused to comply, asserting the Fifth Amendment privilege against self-incrimination. The Court held that the documents were prepared voluntarily and not under any compulsion. Darwin asserted, however, that the documents being demanded by the subpoena were personal in nature, and the District Court noted that if they were personal, then a Fifth Amendment privilege would attach. *Cf., United States v. Doe*, 465 U.S. at 618, 104 S.Ct. at 1245 (O'Connor, J., concurring) ("... the Fifth Amendment provides absolutely no protection for the contents of private papers of any kind"). The District Court stated that Darwin had the burden of proof as to whether the documents were personal and, in the end, denied Darwin's Fifth Amendment assertion because no evidence was offered to show that the documents were personal.

*Darwin* seems to support appellant's argument that personal records are entitled to Fifth Amendment protection, although that position appears to be suspect, based upon the Supreme Court opinion in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). *Darwin* relies on *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), for the notion that private papers are to be protected by the Fifth Amendment. In *Fisher*, however, the Court noted that several of *Boyd*'s express or implicit declarations had not stood the test of time and that its privacy of papers concept has long been a rule searching for a rationale. 425 U.S. at 407–09, 96 S.Ct. at 1579–80. Even *Darwin*, however, does not support an argument for

reversal here, because there is nothing in the record to support appellant's assertion that the documents subpoenaed are "personal" as opposed to tax and business records.[8] On the contrary, the subpoena specifically commands the production of tax and business records, rather than "personal" documents, so *Darwin* avails appellant naught.

The third case relied on by appellant is *In Re: Special Investigation No. 281,* 299 Md. 181, 473 A.2d 1 (1984). In that case, the Attorney General was conducting an investigation into medicaid fraud. A subpoena was issued to a dentist directing him to produce his patient records. The dentist had initially practiced as a sole practitioner and later incorporated and transferred his practice, along with his records, to the corporate entity. The subpoena commanded the production of the corporation's records, including the pre-incorporation records of the dentist. A motion to quash the subpoenas was filed. The trial court denied the motion. The Court of Appeals granted *certiorari* prior to an adjudication of the issue by us. The Court denied the dentist's argument that the subpoenas, if enforced, would violate his Fifth Amendment privilege. The principal reason for the Court's holding, aside from the fact that the dentist had voluntarily created the records so that production of them would not constitute compelled testimonial incrimination (citing *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)), was that the dentist had passed the records from his personal practice to the corporation. The records belonged to the corporation, not the individual dentist. *See, Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974) and *Reamer v. Beall,* 506 F.2d 1345 (4th Cir.1974), *cert. denied,* 420 U.S. 955, 95 S.Ct. 1338, 43 L.Ed.2d 431 (1975). Seizing on the point of ownership, appellant argues that *In Re: Special Investigation 281*

---

**8.** At oral argument appellant's attorney consistently referred to the documents being subpoenaed as "Financial and Tax Records."

supports his position that the documents under the subpoena are personal and have remained personal because they have never been transferred to a separate business.

Appellant's argument misses the mark. First, the records were given to the accountant to be used by the accountant in the preparation of tax returns to be filed with state and federal agencies.[9] Even if ownership of the delivered documents did not pass, the transfer of possession for that intended purpose is inconsistent with the concept that the documents were "personal." The Fifth Amendment privilege is an intimate and personal one, *Couch v. United States*, 409 U.S. 322, 327, 93 S.Ct. 611, 615, 34 L.Ed.2d 548 (1973), which respects a private inner sanctum of individual feeling and thought and proscribes state intrusion to extract self-condemnation. Thus, a transfer of these documents, or the information used to prepare or complete them, to a third party voids that protection unless some other privilege can be asserted. By placing his documents or the information contained therein in the hands of a third party, appellant gave up the intimate and personal privilege against compelled self-incrimination through those papers because compelling the third party to produce the documents or information is not tantamount to compelling appellant to do so. In short, since the subpoena puts appellant under no personal compulsion, he has no right to assert a Fifth Amendment privilege with respect to the documents in the hands of the accountant.

This holding is consistent with that of the Supreme Court in *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). In *Couch,* the question was whether an individual could invoke a Fifth Amendment privilege against compulsory self-incrimination to prevent the produc-

---

**9.** The record is unclear as to whether appellant actually prepared the documents himself and transferred them to the accountant or whether he merely provided the accountant with the information that enabled the accountant to complete the documents.

tion of business and *tax records* in the possession of an accountant. The Court found no Fifth Amendment privilege applicable, ruling that the Fifth Amendment privilege was personal and that the accountant was being compelled and not the individual. The Court further stated that Ms. Couch could not assert any expectation of privacy in the tax records when such records were handed over to an accountant, particularly since much of that information must be disclosed on a tax return. Concluding, the Court held that no Fifth Amendment claim can prevail where there exists no legitimate expectation of privacy and no semblance of governmental compulsion against the person of the accused. Consequently, the assertion of the Fifth Amendment privilege failed and the accountant had to produce the documents to the grand jury.

*Couch* is clearly apposite to the case *sub judice.* The subpoena in *Couch* demanded production of the same type of documents as are sought by the subpoena in this case. The *Couch* subpoena was even broader; it commanded the production of "all other pertinent documents pertaining to the tax liability of the ... taxpayer." As in *Couch,* appellant's records are in the hands of an accountant who is the party under compulsion to produce them; appellant is under no personal compulsion. As in *Couch,* appellant's records lack any expectation of privacy as the information in those records is subject to mandatory disclosure on an income tax return. Based upon *Couch,* the absence of both personal compulsion and expectation of privacy renders appellant's assertion of a Fifth Amendment right inapplicable. *Couch,* 409 U.S. at 336, 93 S.Ct. at 619.

The judgment of the Circuit Court for Baltimore County, ordering the enforcement of the subpoena duces tecum, is affirmed.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.