IN RE: A SPECIAL INVESTIGATION NO. 227

[No. 372, September Term, 1983.]

\* \* \*

IN RE: THE TERM OF THE JANUARY, 1983 GRAND
JURY NO. 280

[No. 611, September Term, 1983.]

*Per Curiam Orders filed September 20, 1983.*

*Opinion filed October 7, 1983.*

The cause was argued before MOYLAN, ADKINS and BLOOM, JJ.

*Gary E. Bair, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellant in case No. 372. *Albert H. Turkus,* with whom were *Dow, Lohnes & Albertson* on the brief, for appellant in case No. 611.

*Albert H. Turkus,* with whom were *Dow, Lohnes & Albertson* on the brief, for appellee in case No. 372. *Gary E. Bair, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee in case No. 611.

MOYLAN, J., delivered the opinion of the Court.

Like *Jarndyce v. Jarndyce,* this investigation of Medicaid fraud at a nursing home and hospital in Prince George's County goes on forever. On September 20, 1983, we heard argument in this consolidated appeal. Because the deliberate delaying tactics which have thwarted, sidetracked, and frustrated this investigation for over two years have already been scandalously effective, we rendered our decision, with mandate to issue forthwith, within an hour of the argument's conclusion. We affirmed the decision of Judge John R. Hargrove in the case of *In Re: The Term of the January, 1983 Grand Jury,* No. 611 on our docket; we reversed the decision of Judge Milton B. Allen in the case of *In Re: Special Investigation No. 227,* No. 372 on our docket. This opinion follows by way of brief explanation for those decisions already rendered.

With respect to *Special Investigation No. 227,* a subpoena *duces tecum* was issued initially by the Baltimore City Grand Jury to the Custodian of Records of the suspect hospital. On April 2, 1982, Judge Allen signed an order granting the hospital's motion to quash the subpoena. Upon

the first appeal to this Court, we vacated that order and remanded the case for further proceedings because of our conclusion that the State had been denied a full and fair hearing; it had not been given the opportunity to file any pleading in opposition to the motion to quash and because it was denied a hearing on the merits of that motion. Upon remand, a hearing was held with respect to the motion to quash this subpoena (and a replacement subpoena similar in every respect except that it was issued by a successor grand jury) in February, 1983. The second motion to quash was signed on May 5, 1983.

The motion was predicated upon the argument that the detailed description of documentary evidence reflected by the subpoena, as well as the very interest in that evidence, was the tainted fruit of the poisoned tree. The ostensibly poisoned tree was an earlier search of the hospital and nursing home which occurred on February 4, 1982. That search was in execution of a valid search warrant. The claim of the hospital, however, is that that search, valid at its inception, was excessive in scope and that the later subpoena was the tainted product of the excess.

Without addressing remotely the Fourth Amendment merits, we find the Supreme Court's decision in the case of *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), to be absolutely dispositive. In that case, the claim was made that the use of the contempt sanction by the court to compel grand jury testimony in answer to questions prompted by knowledge which was the fruit of an earlier Fourth Amendment violation would itself represent a new Fourth Amendment violation. The Supreme Court flatly rejected that logic as it concluded, "Questions based on illegally obtained evidence are only a derivative use of the product of a past unlawful search and seizure. They work no new Fourth Amendment wrong." 414 U.S. at 354.

The Supreme Court concluded that the Fourth Amendment merits and the exclusionary rule had no place at the grand jury stage of investigation:

"It is evident that this extension of the exclusionary rule would seriously impede the grand jury. Because the grand jury does not finally adjudicate guilt or innocence, it has traditionally been allowed to pursue its investigative and accusatorial functions unimpeded by the evidentiary and procedural restrictions applicable to a criminal trial. Permitting witnesses to invoke the exclusionary rule before a grand jury would precipitate adjudication of issues hitherto reserved for the trial on the merits and would delay and disrupt grand jury proceedings. Suppression hearings would halt the orderly progress of an investigation and might necessitate extended litigation of issues only tangentially related to the grand jury's primary objective. The probable result would be 'protracted interruption of grand jury proceedings,' *Gelbard v. United States,* 408 U.S. 41, 70, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972) (White, J., concurring), effectively transforming them into preliminary trials on the merits. In some cases the delay might be fatal to the enforcement of the criminal law." 414 U.S. at 349-350.

The Supreme Court there noted with approval its earlier holding from *United States v. Dionisio,* 410 U.S. 1, 17, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), that:

"Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws."

In view of our holding in this regard, it is inappropriate even to look to the Fourth Amendment merits.

In the companion case of *In Re: The Term of the January, 1983 Grand Jury,* the Hospital took the appeal, which we found to be without merit. The replacement subpoena *duces tecum* at issue in this case was issued on January 26, 1983.

The grand jury to which it was to be returned had convened on January 10, 1983 and was scheduled to expire on May 6, 1983. Although a timely hearing was held on February 1, 1983, the trial judge's Memorandum Opinion and granting of the Motion to Quash was not filed until May 5, 1983, one day prior to the scheduled expiration of the January grand jury. The State quite properly applied for and received from Judge John R. Hargrove an order to extend the life of the January grand jury pursuant to § 8-107 (c) of the Courts and Judicial Proceedings Article. The fact that the order used the declaratory words spelling out that the purpose of the extension was for "receiving the evidence which is the subject of any litigation pending" we find to be of no moment. Had the extended grand jury presumed to do something beyond that limited power, we might have an interesting issue to litigate, but the answer is that it did not do so. Whether the limitation was effective or was void is not before us, for the extended grand jury has not been called upon to act beyond that limitation.

One issue, which gives us only momentary pause, was not raised by the Hospital but very admirably by the State itself. A letter to this Court by Assistant Attorney General Gary E. Bair commendably alerted us to a possible problem with the filing of Judge Hargrove's order. Judge Hargrove signed the order on May 6, 1983 in timely fashion. Totally unlike the very different situation before us in *State v. Dowdell,* 55 Md.App. 512, 464 A.2d 1089 (1983) Judge Hargrove turned over the original of the petition and order to the representative of the Attorney General's Office and directed him to take it to the Clerk's Office for filing. The messenger from the Attorney General's Office, moreover, delivered the order to the Clerk's Office at 4:29 p.m. on that Friday afternoon of May 6. The Clerk in charge of docketing refused to receive the order and directed the law clerk to return on Monday, May 9, 1983, which the law clerk did. Technically, therefore, the order was filed on May 9, three days after the grand jury's term had expired.

In this case, in stark contrast to the very different situation in *Dowdell,* we find substantial compliance. In the first place, the judge did not retain a copy of the order with the unfettered option of changing his mind. In the second place, the law clerk from the Attorney General's Office presented the paper in timely fashion to the Clerk's Office. The clerk's refusal to accept the document was based not upon the fact that the closing hour of 4:30 p.m. had arrived, but upon the very different fact that when the law clerk showed up with the paper to be filed, it was within one minute of closing time on a Friday afternoon. The trial judge and the Attorney General's Office had done everything that they should have done and could have done. This was as substantial as substantial compliance could ever be and we see no reason to invalidate the order of Judge Hargrove.

The appellant — Hospital's additional contention that only the State's Attorney, and not the Attorney General, is empowered to ask for an extension of the life of a grand jury is without merit. With respect to this particular area of investigation, the Medicaid Fraud Unit of the Attorney General's Office is clothed with all of the authority and power ordinarily possessed by the State's Attorney.