473 A.2d 1

IN re SPECIAL INVESTIGATION NO. 281.

No. 63, Sept. Term, 1983.

Court of Appeals of Maryland.

April 4, 1984.

Gregg L. Bernstein and M. Albert Figinski, Baltimore (Arnold M. Weiner, Baltimore, on brief), for appellant.

Gary E. Bair, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

SMITH, Judge.

Maryland Const. art. V, § 3(a)(2) provides that the Attorney General shall "[i]nvestigate, commence, and prosecute ... any ... criminal suit or action or category of such suits or actions ... in any Court of this State, ... on the part of the State ... which ... the Governor, shall have directed or shall direct to be investigated, commenced and prosecuted or defended."

On December 20, 1978, pursuant to that provision, Acting Governor Blair Lee, III, authorized and directed the Attorney General of Maryland to investigate, among other things, "the administration of medical assistance under the State's Medicaid Program," with power "to present to any grand jury which may have jurisdiction over the matter any evidence and testimony that [the Attorney General might] consider necessary and appropriate to carry out this authorization and directive." The letter specified that if criminal charges were brought the Attorney General was "authorized to prosecute in any courts of this State such violations of the law as [might be] disclosed by the investigation with the full powers and authorities possessed by a State's Attorney."

On November 21, 1979, Governor Harry Hughes issued a letter to the Attorney General authorizing him pursuant to this constitutional provision to:

"act[ ] with full powers, rights and privileges possessed by a State's Attorney, to investigate and, where appropriate,

prosecute those categories of cases involving, arising out of or relating to:

"1.  the provision of medical assistance under, or the activities of providers of medical assistance under, the State's Medicaid Program;

"2.  the administration of medical assistance under the State's Medicaid Program;

"3.  the abuse or neglect of patients of health care facilities receiving payments under the State's Medicaid Program."

Pursuant to these directives the Attorney General has created the "Medicaid Fraud Control Unit" of his office.

This litigation is a part of the seemingly endless legal controversies growing out of the exercise of that authority. *See, e.g., In Re Special Investigation No. 249,* 296 Md. 201, 461 A.2d 1082 (1983); *In Re Special Investigation No. 244,* 296 Md. 80, 459 A.2d 1111 (1983); *In Re Special Investigation No. 229,* 295 Md. 584, 458 A.2d 80 (1983); *In Re Special Investigation No. 236,* 295 Md. 573, 458 A.2d 75 (1983); *In Re Special Investigation No. 227,* 55 Md.App. 650, 466 A.2d 48 (1983); *In Re Special Investigation No. 228,* 54 Md.App. 149, 458 A.2d 820, *cert. denied,* 296 Md. 414 (1983).

This case involves seven distinct issues: (1) whether either the contempt issue (where the custodian of the records complied with the subpoena and purged himself of contempt) or the appeal from the denial of the motion to quash the subpoena is moot; (2) whether the issues are moot because of the subsequent indictment of the dentist in question; (3) whether the grand jury subpoena duces tecum issued against the appellant-dentist violated his rights under the Fourth Amendment to the United States Constitution because it was overbroad; (4) whether the dentist's preincorporation patient records may be produced without violating his privilege against self-incrimination under the Fifth Amendment to the United States Constitution; (5) whether the State's cross-appeal should be dismissed because no appellate brief was filed on behalf of the State; (6) whether

the Attorney General is empowered to request the extension of the term of a grand jury which is investigating Medicaid fraud; and (7) whether the circuit court was empowered to issue a contempt order after an appeal was filed. We shall dismiss the appeal but give our opinion on the issues raised. Our view is not favorable to appellants.

I

Appellants are a dentist and his business entity, a professional association operating a dental practice in Baltimore County. Since July 1, 1981, the dentist has practiced through that professional association. Prior to that date he operated as a sole practitioner. He participates in both the Maryland Medical Assistance Program and the Maryland Dental Plan (Blue Shield).

On May 20 and May 25, 1983, the Baltimore City Grand Jury served the custodian of records of the professional corporation with subpoenas duces tecum at the request of an assistant Attorney General assigned to the Medicaid Fraud Control Unit. The May 20 subpoena called for the production of "all patient records" pertaining to a number of specifically named Medical Assistance patients and a somewhat greater number of Blue Shield patients. The May 25 subpoena sought production of nearly all of the business records of the dental practice for the years 1979–1982 and all daily journal sheets for the period July 1, 1979, to April 30, 1983.

The appellants filed a motion to quash the subpoenas. The individual appellant invoked his Fifth Amendment privilege against self-incrimination. Both appellants asserted the Fourth Amendment prohibition against unreasonable searches and seizures.

The parties entered into a stipulation of facts prior to the hearing on the motions to quash. The stipulation provides in pertinent part:

"1.  [The individual appellant] is a licensed dentist whose sole place of business is located at . . . Baltimore County, Maryland.

"2.  [Appellant] participates in both the Maryland Medical Assistance Program and in the Maryland Dental Plan, i.e., the program of the Maryland Dental Service Corporation and Maryland Blue Shield, Inc. (Blue Shield).

"3.  Since July 1, 1981 there has been a professional corporation . . . through which [appellant] has operated his dental practice.  Prior to July 1, 1981, [appellant] practiced as a sole practitioner.

*       *       *       *       *       *

"6.  If a patient who was treated by [appellant] prior to July 1, 1981, came in for treatment after July 1, 1981, no new patient chart was created;  rather, new entries were made on the existing records.

*       *       *       *       *       *

"8.  On the patient charts, [appellant] writes in the services rendered.  On rare occasions, some note may be added by a dental assistant who works at his direction.  When payments are received, credits are noted on the charts and ledgers by the receptionist.

"9.  Patient records, i.e., charts and ledger cards, were maintained regularly at . . . [appellants' Baltimore County office] in alphabetical order without regard to the type of payment plan the patient uses and without regard to the July 1, 1981, [incorporation] date . . . .

*       *       *       *       *       *

"16.  [Appellant] mails invoices for payment under the Blue Shield Plan to the Blue Shield offices . . . in Baltimore County.  In return, Blue Shield mails payments to [appellant's] office in Baltimore County."

A list of all patients mentioned in the May 20 subpoena was attached to the stipulation.  The list divides the patients into the following categories:  those who were seen exclusively before July 1, 1981;  those who were seen exclusively after July 1, 1981;  and those who were seen both before and after

July 1, 1981, the date when the professional association began operation of the dental practice.

The trial judge said on the motion to quash:

"As to the Medicaid patient records listed in item 1 of the May 20, 1983 subpoena, the effect of paragraphs 6 and 9 of the stipulation of facts is, that the pre-incorporation patient records were fully available for use by the P.A. and were commingled with the post P.A. patient records without distinction in the P.A. files.

"For all practical purposes they became the property of the P.A. and the individual dentist cannot claim his personal Fifth Amendment privilege as to them.

\*     \*     \*     \*     \*     \*

"The pre P.A. records of Blue Shield patients are now P.A. property for the same reasons previously stated as to the pre P.A. Medicaid patient records. Although the required records exception does not apply to Blue Shield records since no Government regulation as to record keeping is involved, the doctor cannot invoke his Fifth Amendment privilege as to those records."

The motion to quash was heard on July 13, 1983. In declining to quash on grounds of relevancy the trial judge relied upon our refusal, in *Special Investigation No. 249*, 296 Md. 201, 461 A.2d 1082, decided on June 27, 1983, to adopt the so-called "*Schofield* doctrine" enunciated in *In Re Grand Jury Proceedings*, 486 F.2d 85 (3d Cir.1973).

The appellants sought a stay pending appeal when the trial court issued its order requiring production of the documents. The stay was denied. Production was ordered in thirty days. An appeal was filed. The State filed a cross appeal. Thereafter the Court of Special Appeals denied the motion to stay. Upon expiration of the thirty day period for production of the documents the State sought to hold appellant's counsel, the then custodian, in constructive contempt. In due season the custodian was held in contempt and ordered incarcerated unless the records were produced on or before August 31. An appeal was entered to that order.

The appellants then sought a writ of certiorari from us prior to adjudication of the controversy by the Court of Special Appeals. At the same time they sought a stay of the required production. We issued the writ of certiorari but denied the motion to stay. The patient records were produced on September 2, 1983, under pain of incarceration.

On September 8, at the request of the Attorney General, an order was entered extending the term of the grand jury in order that the investigation of the dentist and his professional association could continue. Its term had been scheduled to expire on September 9. Subsequently a sixty-eight count indictment was returned against the dentist. The State then moved to dismiss this proceeding on the ground of mootness.

## II

We are first concerned with whether either the contempt issue (where the custodian of the records complied with the subpoena and purged himself of the contempt) or the appeal from the denial of the motion to quash the subpoena is moot. The dentist claims that the appeal is not moot because, in deciding this case, we can still fashion an effective remedy even though the custodian of records complied with the subpoena in order to purge himself of contempt. He says that if we determine that his constitutional rights have been violated we can order that the records be returned to him and that their use be prohibited at trial. The State basically argues that the appeal is moot because no controversy continues to exist between the parties: the custodian not only turned over the records but the grand jury has returned an indictment against the dentist.

We have spoken several times as to the rules for determining whether a particular case is moot. For example, in *Maryland Tobacco Grow. v. Maryland Tob. Auth.,* 267 Md. 20, 296 A.2d 578 (1972), we stated:

"This Court has consistently held that when the chronology of a case makes it apparent that nothing we could do

could undo or remedy that which has already occurred, except under the most extraordinary circumstances requiring a decision in the public interest, the case must be dismissed as moot. We do not sit to give opinions on abstract propositions . . . . " 267 Md. at 25–26, 296 A.2d at 580.

*Accord State v. Ficker,* 266 Md. 500, 295 A.2d 231 (1972); *Lloyd v. Supervisors of Elections,* 206 Md. 36, 111 A.2d 379 (1954). In *Attorney General v. Anne Arundel Co. School Bus,* 286 Md. 324, 407 A.2d 749 (1979), Judge Davidson stated for the Court the standard for determining whether a case is moot: "A question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide." 286 Md. at 327, 407 A.2d at 752. The Court further noted, "Of course, a court may decide a moot question where there is an imperative and manifest urgency to establish a rule of future conduct in matters of important public concern, which may frequently recur, and which, because of inherent time constraints, may not be able to be afforded complete appellate review." 286 Md. at 328, 407 A.2d at 752.

In applying these principles to the facts of this case, it appears that the contempt issue is moot because the custodian of the records complied with the order to produce and purged himself of civil contempt. There is, in this instance, no effective remedy that a court could devise that would undo his compliance with the order. It appears, however, that there are important issues of public interest raised which merit an expression of our views for the guidance of courts and litigants in the future. Indeed, our comments will have a distinct bearing on issues to be decided at trial. Hence, we shall express ourselves as we did, for example, in *Special Investigation No. 249,* 296 Md. 201, 461 A.2d 1082, and *Special Investigation No. 244,* 296 Md. 80, 459 A.2d 1111.

## III

The State contends that the appeal is moot by virtue of the subsequent indictment of the dentist. We have already determined mootness on other grounds. Hence, we have no need to address this point.

## IV

The dentist argues that, despite the presumption of regularity which attaches to grand jury subpoenas, the subpoena issued in this case violated the Fourth Amendment requirements of relevancy to the investigation and reasonableness. He points out that although the grand jury was authorized to investigate Medicaid fraud, the subpoena sought production of Blue Shield patient records. Blue Shield insurance is distinct from the Medical Assistance Program and is not subject to the then pending grand jury probe in Baltimore City. He claims that the subpoena directed to the Blue Shield records is "an illicit short-cut designed to grab records for eventual presentation elsewhere, *i.e.,* in Baltimore County." Further, the dentist claims he should not be required to produce Blue Shield patient records because the Grand Jury of Baltimore City is empowered only to indict for crimes that have occurred in the City. No nexus exists between the Blue Shield records and Baltimore City: the dentist's sole place of business is in Baltimore County; the patient records were kept at that office; and requests for Blue Shield payments were made to the Blue Shield office in Baltimore County. Therefore, it is argued, the grand jury subpoena seeking production of the Blue Shield patient records constitutes a fishing expedition and as such violates the Fourth Amendment.

In our system of jurisprudence grand juries have been accorded broad powers to investigate whether a crime has been committed. *See United States v. Dionisio,* 410 U.S. 1, 15, 93 S.Ct. 764, 772, 35 L.Ed.2d 67 (1973); *Blair v. United States,* 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919); *United States v. Reno,* 522 F.2d 572, 575 (10th

Cir.1975); *Special Investigation No. 244,* 296 Md. at 90, 459 A.2d at 1116. As the Supreme Court noted in *Dionisio:*

"A grand jury has broad investigative powers to determine whether a crime has been committed and who has committed it. The jurors may act on tips, rumors, evidence offered by the prosecutor, or their own personal knowledge. *Branzburg v. Hayes,* 408 U.S. [665], at 701 [92 S.Ct. 2646, at 2666, 33 L.Ed.2d 626]. No grand jury witness is 'entitled to set limits to the investigation that the grand jury may conduct.' *Blair v. United States,* 250 U.S., at 282 [39 S.Ct. at 471]. And a sufficient basis for an indictment may only emerge at the end of the investigation when all the evidence has been received." 410 U.S. at 15–16, 93 S.Ct. at 772.

*Accord Coblentz v. State,* 164 Md. 558, 566, 166 A. 45, 49 (1933). The Fourth Amendment prohibition against unreasonable searches and seizures, however, restricts this investigatory authority. *See, e.g., Hale v. Henkel,* 201 U.S. 43, 76, 26 S.Ct. 370, 379, 50 L.Ed. 652 (1906); *Special Investigation No. 249,* 296 Md. at 208–09, 461 A.2d at 1086.

■ A subpoena duces tecum issued by a grand jury to a witness must be reasonable and relevant to the investigation. *See Okla. Press Pub. Co. v. Walling,* 327 U.S. 186, 208, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946); *United States v. MacKey,* 647 F.2d 898, 901 (9th Cir.1981); *Reno,* 522 F.2d at 575; *In Re Horowitz,* 482 F.2d 72, 79 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). As was noted in *People v. Mileris,* 103 Ill.App.3d 589, 591, 59 Ill.Dec. 307, 309, 431 N.E.2d 1064, 1066 (1981), "The permissible breadth of a *subpoena duces tecum* is to be measured by the scope of the problem under investigation and a subpoena which is not unreasonably broad when measured by that standard will be sustained." In determining whether a particular subpoena is reasonable, courts consider three requirements:

"They are: (1) that the subpoena command only the production of materials relevant to the investigation; (2) that the subpoena specify the materials to be produced with reasonable particularity; and (3) that the subpoena

command production of materials covering only a reasonable period of time." *Reno,* 522 F.2d at 575.

*Accord In Re Corrado Bros., Inc.,* 367 F.Supp. 1126, 1129 (D.Del.1973).

We have decided several cases that involve the permissible scope of a subpoena duces tecum issued in connection with the Attorney General's Medicaid fraud investigation. As earlier indicated, in *Special Investigation No. 249,* 296 Md. at 208, 461 A.2d at 1086, we rejected the Third Circuit's *Schofield* or "minimum showing" test applicable to grand jury subpoenas. In *Special Investigation No. 244,* 296 Md. at 94, 459 A.2d at 1118, we held that the Baltimore City Grand Jury was empowered to issue a subpoena duces tecum to a witness located outside the City limits because the documents sought might aid "its investigation into possible violations of the criminal law of this State which may have occurred within Baltimore City."

■ These cases indicate that we recognize and intend to uphold the broad scope of authority granted to the grand jury to investigate violations of criminal law. As long as the documents sought in a grand jury subpoena duces tecum are relevant to the investigation, are noted with reasonable particularity, and cover only a reasonable period of time, a court will not consider the subpoena to be overbroad on the grounds that it is but a fishing expedition. If these requirements are satisfied, then, absent a showing that the subpoena impermissibly infringed upon the constitutional rights of the witness, the subpoena will be upheld.

■ In applying this test to the subpoena duces tecum at issue in this case it is clear that the Fourth Amendment rights of the dentist have not been violated. Taking the requirements in reverse order, it first appears that the subpoena seeks documents (patient records) which cover a reasonable period of time (three years). We add parenthetically that there has been no objection raised as to the time period. Second, the subpoena specifically identified each patient and the records sought pertaining to such patients,

thus satisfying the requirement of "reasonable particularity." Third, the Blue Shield patient records are relevant to the grand jury's investigation into Medicaid fraud despite the fact that the records are maintained and the Blue Shield billing procedures are conducted only in Baltimore County. As the Attorney General pointed out both in the circuit court and on oral argument in this Court, the billing practices evident from the Blue Shield patient records might shed some light on whether the dentist engaged in fraudulent conduct with respect to the billing of his Medical Assistance patients. It appears that the State has established that "there is a relation between the documents which must be produced and the purpose of the inquiry." *Reno*, 522 F.2d at 576. The fact that no indictment had been issued against the dentist at the time the subpoena for patient records was issued is not a ground for dubbing the request a mere fishing expedition.

The subpoena does not violate the Fourth Amendment rights of the dentist. Unless it violates other constitutional rights of the dentist, it should be upheld because it was not overbroad, irrelevant, or unreasonable.

## V

We next move to the issue of whether the dentist's preincorporation patient records may be produced without violating his Fifth Amendment privilege against self-incrimination.[1]

The dentist argues that his Fifth Amendment privilege against self-incrimination extends to the preincorporation patient records sought by the grand jury. These records are now in use by the professional association. He concedes that

---

1. Maryland Declaration of Rights Art. 21 has been determined to be in pari materia with the Fifth Amendment to the United States Constitution. *See, e.g., Andrews v. State,* 291 Md. 622, 626–27, 436 A.2d 1315, 1317 (1981); *Richardson v. State,* 285 Md. 261, 265, 401 A.2d 1021, 1024–25 (1979); *Andresen v. Bar Ass'n of Mont. Co.,* 269 Md. 313, 322, 305 A.2d 845, 851, *cert. denied,* 414 U.S. 1065, 94 S.Ct. 572, 38 L.Ed.2d 470 (1973).

if only the records of the professional association are at issue, then he has no privilege to be protected. Nevertheless, he presents three basic arguments to support his contention that the preincorporation patient records are personal and thus subject to the Fifth Amendment privilege against self-incrimination. First, he claims that the Fifth Amendment protects all records of a sole proprietor. He claims that because he was a solo practitioner when the patient records at issue were created, the subsequent incorporation of the dental practice did not dissipate the privilege which attached at that time. Thus, he claims that he has standing to assert the privilege as to the patient records created before July 1, 1981. Second, the dentist contends that production of the records would constitute compelled testimonial incrimination, which is prohibited by the Fifth Amendment: no individual may be compelled to testify against himself. The act of producing records in these circumstances would be equivalent to the dentist's getting on the stand and authenticating the existence and contents of the records sought by the subpoena. Third, the dentist states that the required records exception to the Fifth Amendment privilege against self-incrimination is inapplicable to the patient records, primarily because there is no statute, rule or ordinance which specifies that these types of records be maintained by a dental care provider.

We do not rely for our decision upon the required records exception. Thus, there is no reason to address the appellants' third argument. As to the second argument, we observe that the dentist voluntarily created the records at issue and that persons other than the dentist are in a position to verify the records even if the contention of the dentist had merit after the view we take of the first claim. Thus, the dentist's production of the patient records pursuant to the subpoena does not constitute compelled testimonial incrimination in violation of the Fifth Amendment. *See Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

The dentist asserts that the trial judge "ignored what the individual appellant argued was the implicit import of *United States v. Hankins,* 565 F.2d 1344, *opinion clarified,* 581 F.2d 431 (5th Cir.1978), *cert. denied,* 440 U.S. 909 [99 S.Ct. 1218, 59 L.Ed.2d 457] (1979)." We do not ignore it. We merely state that it and similar cases upon which the dentist relies are clearly distinguishable upon their facts.

In *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974), the Court determined that a member of a small partnership may not invoke the privilege against self-incrimination with respect to a subpoena requesting production of the partnership's financial records. In that case, the partnership was in the process of dissolution and Bellis had joined another law firm. The first firm's financial records had been maintained in Bellis' old office and had been removed to his new office. The district court held him in civil contempt when he refused to comply with the federal grand jury's subpoena duces tecum, ruling that his Fifth Amendment personal privilege did not extend to the partnership's financial records. The Third Circuit affirmed, as did the Supreme Court. The Court first reviewed its past holdings relative to the Fifth Amendment. It noted, "The privilege applies to the business records of the sole proprietor or sole practitioner as well as to personal documents containing more intimate information about the individual's private life." *Id.* at 87–88, 94 S.Ct. at 2182–83. *But cf. United States v. Doe,* —— U.S. ——, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) (Fifth Amendment does not protect contents of sole proprietor's business records). The Court further stated that "an individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." 417 U.S. at 88, 94 S.Ct. at 2183.

The Court observed in *Bellis:*

"In view of the inescapable fact that an artificial entity can only act to produce its records through its individual

officers or agents, recognition of the individual's claim of privilege with respect to the financial records of the organization would substantially undermine the unchallenged rule that the organization itself is not entitled to claim any Fifth Amendment privilege, and largely frustrate legitimate governmental regulation of such organizations." 417 U.S. at 90, 94 S.Ct. at 2184.

The Court's decision in *Bellis* apparently rested on its recognition that the Fifth Amendment privilege against self-incrimination protects the privacy interests of the individual and that an organized entity cannot expect such privacy with respect to its financial records. 417 U.S. at 92, 94 S.Ct. at 2185. *But see United States v. Doe,* —— U.S. at ——, 104 S.Ct. at 1245 (O'Connor, J., concurring) ("[T]he Fifth Amendment provides absolutely no protection for the contents of private papers of any kind."). Noting the analysis of the Court in *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944) (neither labor union nor its agents acting in their official capacity may invoke the Fifth Amendment privilege against self-incrimination in response to a subpoena duces tecum), Justice Marshall stated for the Court in *Bellis:*

"The analysis of the Court in *White,* of course, only makes sense in the context of what the Court described as 'organized, institutional activity.' 322 U.S., at 701 [64 S.Ct. at 1252]. This analysis presupposes the existence of an organization which is recognized as an independent entity apart from its individual members. The group must be relatively well organized and structured, and not merely a loose, informal association of individuals. It must maintain a distinct set of organizational records, and recognize rights in its members of control and access to them. And the records subpoenaed must in fact be organizational records held in a representative capacity. In other words, it must be fair to say that the records demanded are the records of the organization rather than

those of the individual under *White.*" 417 U.S. at 92–93, 94 S.Ct. at 2185.

Because partnerships "may and frequently do represent organized institutional activity," Bellis, as a member of a partnership, was precluded from asserting the privilege against self-incrimination insofar as the partnership's financial records were concerned. 417 U.S. at 93–95, 94 S.Ct. at 2185–87. Although the partnership had only three members, the determinative factor was that it "did have an established institutional identity independent of its individual partners." 417 U.S. at 95, 94 S.Ct. at 2187.

In *Reamer v. Beall,* 506 F.2d 1345, 1346 (4th Cir.1974), *cert. denied,* 420 U.S. 955, 95 S.Ct. 1338, 43 L.Ed.2d 431 (1975), the court held that the sole shareholder and sole employee of a Maryland chartered professional corporation could not invoke the privilege against self-incrimination to justify nonproduction of corporate records in response to a grand jury subpoena. It is significant that the court there said:

"Even though, under Maryland law, professional corporations do not possess all of the attributes of ordinary business corporations, and stockholders and professional employees of professional corporations do not enjoy the same limitations of civil liability as do their counterparts of ordinary business corporations, the force of the statement in *Bellis,* 417 U.S. at 100, 94 S.Ct. at 2189, that 'no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be,' is not diluted." 506 F.2d at 1346.

■ The patient records here at issue were a part of the warp and woof of the professional association. We believe the trial judge was correct in his conclusion that title to those patient records passed to the professional association once the records were turned over to it. These are no longer the records of the individual dentist. Hence, he has no Fifth Amendment right or privilege in those records.

## VI

■ The next issue is whether the State's cross-appeal should be dismissed because no appellate brief was filed on its behalf. Maryland Rule 830 provides that within forty days after the filing of the record in this Court, appellant shall file with the clerk thirty copies of a printed brief conforming to the requirements of Rule 831. A similar provision is found in Rule 1030 pertaining to the Court of Special Appeals. There having been no compliance with the rule, the cross-appeal must be dismissed.

## VII

■ Appellants argue that the grand jury's term was not properly extended because the Attorney General has no authority to make such a request of a circuit court. Maryland Code (1974) § 8–107(c), Courts and Judicial Proceedings Article, states:

"*Grand jury term may be extended.*—On petition by the State's attorney, a judge of the circuit court of a county may order a grand jury to be continued beyond its term to conduct a particular investigation. A grand jury continued in accordance with this section has every power it originally had but is limited to the investigation specified by the judge. The grand jury shall continue until its investigation is completed unless discharged sooner by the judge."

The dentist contends that only the State's Attorney of a county may petition a circuit court to continue a grand jury's term.

The Constitution vests the Attorney General with the prosecutorial powers we quoted at the outset of this opinion. In *Special Investigation No. 249,* 296 Md. at 203, 461 A.2d at 1084, and *Special Investigation No. 244,* 296 Md. at 87–88, 459 A.2d at 1115, we upheld the power of the Attorney General to conduct these Medicaid fraud investigations pursuant to the grant of authority from the Governor. It will be noted that the Governor in his letter of November 21, 1979, to the Attorney General specified that the latter was

to have the "full powers, rights and privileges possessed by a State's Attorney . . . ."

One of the well understood canons for the construction of statutes is that courts should avoid absurd consequences. Assume, for example, that the Governor directed the Attorney General to investigate the corruption of the State's Attorney in a given county. Under appellants' view, without the cooperation of the allegedly corrupt State's Attorney, no one, including the Attorney General, would be able to request an extension of the term of the grand jury for the purpose of investigating that State's Attorney. Thus, to carry through the contention of the appellants in this case would result in an absurd consequence. We therefore have no difficulty in concluding that the grand jury's term here was properly extended at the request of the Attorney General. The Court of Special Appeals reached a similar conclusion in *Special Investigation No. 227,* 55 Md.App. at 655, 466 A.2d at 50–51 (1983).

## VIII

The final issue is whether the circuit court was empowered to issue a contempt order against the custodian of the dental records in light of the fact that an appeal from a partial denial of a motion to quash the subpoena had been noted. The appellants argue that because the denial of a motion to quash the grand jury subpoena is a final, appealable order, the circuit court was divested of its jurisdiction at the moment the appeal was filed. It is claimed that jurisdiction then rested solely with the Court of Special Appeals to whom the appeal had been noted. Thus it is contended that the circuit court was "precluded from taking any further action upon the matters which formed the substance of the order appealed from." The Attorney General, on the other hand, contends that the circuit court retained its fundamental jurisdiction notwithstanding the filing of an appeal. Thus, it is claimed, the trial judge was authorized to issue an order requiring the custodian to show cause why he should

not be held in contempt when the subpoenaed documents were not produced as directed.

In *Dorsey v. State,* 295 Md. 217, 226–27, 454 A.2d 353, 358 (1983), we referred to *Stewart v. State,* 287 Md. 524, 526, 413 A.2d 1337, 1338 (1980), where Judge Digges pointed out for the Court, "quoting 1 J. Pomeroy, *Equity Jurisprudence* §§ 129–31 (5th ed. 1941), and citing *First Federated Com. Tr. v. Comm'r,* 272 Md. 329, 334, 322 A.2d 539 (1974), that juridically, jurisdiction refers to two quite distinct concepts: (i) The *power* of a court to render a valid final judgment, and (ii) the *propriety* of granting the relief sought." (Emphasis in original.) We noted that in *Stewart* Judge Digges went on to say for the Court, citing *First Federated* and other cases, that there is an absence of authority in a court, so as to render its judgment a nullity, only when that court lacks fundamental jurisdiction over the judgment rendered. We also referred to our recent discussion of jurisdiction in *Brodak v. Brodak,* 294 Md. 10, 14–17, 447 A.2d 847, 848–50 (1982), and *Cant v. Bartlett,* 292 Md. 611, 619, 440 A.2d 388, 392 (1982).

In *Pulley v. State,* 287 Md. 406, 412 A.2d 1244 (1980), we held not only that a defendant could appeal from a denial of his motion to dismiss on double jeopardy grounds, but also that pending appeal of this "interlocutory" order, the circuit court retained "its power, which we here denominate as 'fundamental jurisdiction,' to adjudicate the controversy relating to the subject matter of this criminal cause." 287 Md. at 414, 412 A.2d at 1248. We determined that if the General Assembly bestows upon a court jurisdiction over particular classes of cases, then the court cannot be considered as lacking subject matter jurisdiction with respect to those cases. 287 Md. at 416, 412 A.2d at 1249. We noted:

"[I]t is our view that the general use of the term 'jurisdiction' was merely an indication that the trial court, from which the appeal had been taken, was prohibited from re-examining the decision or order upon which the appeal was based. In other words, the trial court retains its

'fundamental jurisdiction' over the cause, but its right to exercise such power may be interrupted by (i) statute or Maryland Rule; (ii) the posting of authorized appeal bond, or bail following a conviction and sentence, or (iii) a stay granted by an appellate court, or the trial court itself, in those cases where a permitted appeal is taken from an interlocutory or final judgment." 287 Md. at 417, 412 A.2d at 1250.

Judge Digges also stated for the Court, "If the trial court does ... decide to proceed during the pendency of the appeal, it, absent a stay required by law, or one obtained from an appellate court, has the authority to exercise the 'fundamental jurisdiction' which it possesses." 287 Md. at 419, 412 A.2d at 1251 (footnote omitted). *See also Stewart,* 287 Md. at 528, 413 A.2d at 1339 ("[W]hen a court of general jurisdiction has jurisdiction over the subject matter of the litigation and also the parties, it ordinarily has power to decide the issue in dispute between those parties.").

▮▮▮ In this case, the circuit court undeniably had jurisdiction over the subject matter. *See* Code (1974) § 1–202, Courts and Judicial Proceedings Article. In addition, the circuit court is authorized to subject a person to contempt for failure to comply with a court order. *See* Md.Rules Subtitle P. The circuit court thus exercised its "fundamental jurisdiction" as to the order issued to the custodian of records concerning compliance with the subpoena duces tecum. Further, the circuit court's issuance of show cause and contempt orders was "proper" given the need to allow the investigation of the dentist to proceed. Applying the principle delineated in *Pulley,* it is clear that neither a statute nor a Maryland Rule interrupted the trial court's "fundamental jurisdiction." Therefore, the dentist's argument that the circuit court lacked jurisdiction to issue a contempt order must fall.

APPEAL AND CROSS–APPEAL DISMISSED; APPEL-LANTS TO PAY THE COSTS.